UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TCHAIVOSKY JENKINS,

    Plaintiff,

v.                                                        Case No: 6:12-cv-116-Orl-36GJK

HUMPHREY MANAGEMENT AND
HOSPITALITY, INC.,

    Defendant.
_____/

## **ORDER**

This cause comes before the Court upon Plaintiff Tchaivosky Jenkins' Motion for Summary Judgment ("Jenkins' Mot.") (Doc. 23) and Defendant Humphrey Management and Hospitality, Inc., d/b/a/ Inn on the Beach's ("Humphrey") Motion for Summary Judgment ("Humphrey's Mot.") (Doc. 47). Each party filed a response to the respective Motions. Doc. 27 ("Humphrey's Opp."); Doc. 55 ("Jenkins' Opp."). Upon due consideration of the parties' submissions, including memoranda of counsel, affidavits, and accompanying exhibits, and for the reasons that follow, Jenkins' Motion will be denied and Humphrey's Motion will be granted.

**I.**    **STATEMENT OF FACTS**[1]

This action arises from Humphrey's termination of Jenkins' employment, allegedly based on race, ethnic origin, and age in violation of 42 U.S.C. § 2000 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), and 29 U.S.C. § 621 *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"). Doc. 1. Jenkins is an African-American male who was born in 1954 and whose country of origin is the United States. Doc. 55-1, Affidavit of Tchaivosky Jenkins ("Jenkins

---

[1] The Court has determined the facts based on the parties' submissions, including the stipulation of agreed material facts, affidavits, and accompanying exhibits filed with the Court.

Aff.") ¶ 5. Jenkins was employed by Humphrey in 2002 as a porter, where his responsibilities included cleaning, assisting with the housekeeping department, and other various duties. *Id.* ¶¶ 2, 4. In July 2009, Jenkins slipped on the floor and injured his back while on the job. *Id.* ¶ 9. As a consequence, he suffered extreme pain in his lower back, and was confined to bed and out of work for a few days. *Id.* ¶¶ 13-14. When Jenkins came back to work on or about July 22, 2009, he was terminated without notice from his employment with Humphrey. *Id.* ¶¶ 3, 14. At that time, he was not given a reason for his termination, *id.* ¶ 14, and in fact, had never been told that there were any problems with his performance, *id.* ¶ 6. Jenkins was terminated in the summertime during the tourism season and was not aware of any business at the Inn slowing down. *Id.* ¶¶ 22-23.

About a week prior to his termination, Jenkins had been asked to train two Caucasian individuals whom he believed were in their twenties and who had foreign accents. *Id.* ¶ 16. On the day Jenkins was terminated, he saw the two individuals whom he had trained programming televisions, a job he had trained them to do and which was one of his former job duties. *Id.* ¶ 17. Additionally, another porter with whom Jenkins had worked, Raymond Jackson, was also let go. *Id.* ¶¶ 24-25. Around the time that Jackson was no longer employed, the company employed a Caucasian male in his early 20's who did not have a foreign accent. *Id.* ¶ 26. Jenkins had trained the individual to perform the same job duties that Jackson had been performing as a porter. *Id.*

Gulamabbas Abdulhussein, an African American, was President of Humphrey at the time of Jenkins' employment and termination. Doc. 45, Ex. A ("Emp. Aff.") ¶ 1. In 2009, Abdulhussein determined that the Inn had been receiving a lot of complaints, low ratings, and low revenues. *Id.* ¶ 4. Abdulhussein further learned that other hotels in the area that had fewer complaints and higher ratings used employee leasing companies, and that these companies had various benefits, such as increasing staffing flexibility due to seasonality, decreasing costs relating

to holiday and vacation pay, and eliminating worker's compensation expenses. *Id.* ¶ 5. Based on these potential benefits and the poor performance of the Inn, Abdulhussein decided that it would be in the Inn's best interest to outsource housekeeping services, as well as several other positions, to an employee leasing agency. *Id.* ¶¶ 6, 16. Abdulhussein further felt that using an employee leasing agency would benefit Humphrey by providing a larger selection of potential employees. *Id.* ¶ 7.

Therefore, in June and July 2009, Abdulhussein used an employee leasing agency to provide employees for the positions he anticipated eliminating. *Id.* ¶ 8. He first used the agency to evaluate the performance of the current staff in order to determine whether he should eliminate all of the positions or whether he should merely restructure the business. *Id.* ¶ 9. Abdulhussein also instructed the General Manager to begin transitioning employees to the leasing agency. *Id.* ¶ 10. In June and August 2009, the General Manager terminated the entire housekeeping staff as well as a few other employees. *Id.* ¶ 11. Several Caucasian men and women were among those whose positions were eliminated. *Id.* ¶ 12. In August 2009, Abdulhussein hired Efrain Silva as General Manager, who posted a "Help Wanted" sign for approximately one week to fill vacant positions that were not being leased out. *Id.* ¶¶ 13, 14; Doc. 47, Ex. B ("Silva Aff.") ¶¶ 3, 7. Neither Abdulhussein nor Silva prevented any terminated employee from seeking re-employment through the employee leasing agency. Emp. Aff. ¶ 15; Silva Aff. ¶ 8.

Jenkins subsequently filed a Complaint against Humphrey alleging that his employment had been terminated in violation of Title VII and the ADEA. Doc. 1. The instant motions for summary judgment followed.

**II.    STANDARD OF REVIEW**

Summary judgment is appropriate only when the court is satisfied that "there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law"

3

after reviewing the "materials in the record, including documents . . . affidavits or declarations, stipulations . . . admissions . . . or other materials[.]" Fed. R. Civ. P. 56(a), (c)(2). Issues of facts are genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. *Id.* The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003).

"Cross motions for summary judgment do not change the standard." *Perez-Santiago v. Volusia Cnty.*, No. 6:08-cv-1868-Orl-28KRS, 2010 WL 917872, at *2 (M.D. Fla. Mar. 11, 2010) (internal citations omitted). "'Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.'" *Id.* (internal quotations and citations omitted). "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts." *Id.*

### III. ANALYSIS

#### A. Counts I & II: Termination Based Upon Race and Ethnic Origin

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prove discrimination under Title VII, a plaintiff must

establish that he was a qualified member of a protected class and was subject to an adverse employment action in contrast to similarly situated employees outside of the protected class. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253 (11th Cir. 2010)).

In employment discrimination cases, the plaintiff must show that the defendant intentionally discriminated against him, a burden that remains at all times with the plaintiff. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Further, to prevail on a Title VII disparate treatment claim, a plaintiff must prove that the defendant acted with discriminatory intent. *Hawkins v. Ceco Corp.*, 883 F.2d 977, 980–981 (11th Cir. 1989); *Clark v. Huntsville City Bd. of Educ.*, 717 F.2d 525, 529 (11th Cir. 1983)). Such discriminatory intent may be established either by direct evidence or by circumstantial evidence meeting the three step procedure set out for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See also Holifield v. Reno*, 115 F.3d 1555, 1561–62 (11th Cir. 1997); *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1184 (11th Cir. 1984). The plaintiff must first present a *prima facie* case of discrimination by either: (1) showing direct evidence of discrimination; (2) satisfying the scheme for circumstantial evidence of discrimination under *McDonnell Douglas*; or (3) by demonstrating, through statistics, a pattern of discrimination. *Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1500 (11th Cir. 1991).

Because direct evidence of discrimination is seldom available, a plaintiff typically relies on circumstantial evidence to prove discriminatory intent, using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green* and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Holifield*, 115 F.3d at 1561–62; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527–1528 (11th Cir.1997). Under this framework, a plaintiff is first required to create an inference of discriminatory intent, and thus carries the initial burden of establishing a

*prima facie* case of intentional discrimination. *McDonnell Douglas*, 411 U.S. at 802; *see also Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1310, *reh'g denied and opinion superseded in part*, 151 F.3d 1321 (11th Cir.1998); *Combs*, 106 F.3d at 1527. If the plaintiff meets this burden, there is a presumption that intentional discrimination has occurred. *Burdine*, 450 U.S. at 254 n.7; *Crawford v. Western Elec. Co.*, 745 F.2d 1373, 1376 (11th Cir. 1984).

Once the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802; *Jones*, 137 F.3d at 1310. If the defendant articulates one or more such reasons, the presumption of discrimination is rebutted and the burden shifts back to the plaintiff to prove that the reasons offered by the defendant are a pretext for unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 805; *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000). "Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff." *EEOC* v. *Joe's Stone Crabs*, 296 F.3d 1265, 1273 (11th Cir. 2002), *cert. denied*, 539 U.S. 941 (2003).

      *1.    No Prima Facie Case of Disparate Treatment Discrimination*

Jenkins alleges in his Complaint that Humphrey violated Title VII by terminating his employment based on race and/or national origin. Doc. 1 ¶¶ 15, 28. Jenkins has presented no direct or statistical evidence of race or national origin discrimination, so the Court evaluates his claims based on circumstantial evidence under the *McDonnell-Douglas* framework. Under this framework, to establish a *prima facie* case of disparate treatment discrimination, Jenkins must demonstrate that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified to do the job; and (4) he was replaced by a member outside of his

6

protected class. *See Burke-Fowler v. Orange County*, 447 F.3d 1319, 1323 (11th Cir. 2006); *Holifield*, 115 F.3d at 1562.[2] "Demonstrating a *prima facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Jones*, 137 F.3d at 1310–1311; *Holifield*, 115 F.3d at 1562; *see Burdine*, 450 U.S. at 253–54. By establishing a *prima facie* case, the plaintiff creates a rebuttable presumption that the challenged action was motivated by a discriminatory intent. *Joe's Stone Crabs,* 296 F.3d at 1272.

Jenkins contends that he has demonstrated a *prima facie* case of disparate treatment discrimination based on his race and/or national origin. Jenkins' Mot. at 1-3. Specifically, with regard to his racial discrimination claim, he states that he is a member of a protected class because he is African-American, he was terminated from his employment for no reason, and he was replaced by a Caucasian individual. *See id.* Likewise, with regard to his national origin discrimination claim, he states that he is a member of a protected class because his country of origin is the United States, he was terminated for no reason, and he was replaced by employees with foreign accents. *See id.*

Humphrey does not dispute that, as an African-American whose national origin is the United States, Jenkins is a member of a protected class for purposes of both his race and national origin discrimination claims. Humphrey's Opp. at 3; Humphrey's Mot. at 4. Humphrey likewise

---

[2] Jenkins is apparently also alleging a class-wide disparate treatment claim. *See* Jenkins' Mot. at 2-4. In an action alleging class-wide disparate treatment, a plaintiff must establish by a preponderance of the evidence that racial discrimination was the company's standard operating procedure—the regular rather than the unusual practice. *Dorsey v. Froonjian*, 8:10-CV-1895-T-30AEP, 2011 WL 1466273, *2 (M.D. Fla. Mar. 25, 2011), *report and recommendation adopted*, 8:10-CV-1895-T-30AEP, 2011 WL 1465459 (M.D. Fla. Apr. 18, 2011) (citing *Kilgo v. Bowman Transp., Inc.* 789 F.2d 859, 874 (11th Cir. 1986)). Jenkins' contention that "Defendant . . . terminated other African-American males in Defendant's maintenance department replacing them with Caucasian employees[]," Jenkins' Mot. at 4, fails to demonstrate any type of "practice" on the part of Humphrey. Thus, Jenkins' attempt to establish such a claim is without merit.

concedes that Jenkins suffered an adverse employment action when he was terminated. *Id.* Humphrey argues, however, that Jenkins has failed to establish that he was qualified for his job, or that an individual outside of Jenkins' protected class was hired to replace him. Humphrey's Opp. at 3; Humphrey's Mot. at 4-5.

For the purpose of employment discrimination cases, an employee is considered to be "qualified" for a position if he or she meets the criteria that the employer has articulated for the position. *See Wright v. Southland Corp.*, 187 F.3d 1287, 1300 n. 16 (11th Cir. 1999). Accordingly, Jenkins must set forth evidence that shows that he was meeting Humphrey's legitimate performance expectations at the time of his discharge. *See Ferrell v. Masland Carpets, Inc.*, 97 F. Supp. 2d 1114, 1124 (S.D. Ala. 2000).

The Court finds that Jenkins has set forth evidence sufficient to establish that he was qualified to perform his job. In the seven and a half years that Jenkins had been working for Humphrey, he was never told that there were any problems with his job performance, and he was never reprimanded or counseled. Jenkins' Opp. at 4. Further, Humphrey sets forth only general claims regarding the Inn's service and low ratings without regard to what service was poor, whether such service had anything to do with Jenkins, or the cause of the low ratings. *Id.* at 4-5. Although at least one court in this Circuit has held that lack of criticism alone is insufficient for establishing that a plaintiff was qualified to perform his or her job, *Ferrell*, 97 F. Supp. 2d at 1124, the Eleventh Circuit has held that if a plaintiff has enjoyed a long tenure at a certain position, it can be inferred that he or she was qualified to hold that particular position, *see Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999). Here, Jenkins had been employed at the Inn as a porter for seven and a half years prior to his termination, a sufficiently long period of time. Jenkins' lengthy employment, coupled with the absence of reprimands and problems with his

employment, supports the inference that he was qualified for his position.

With respect to the final element, however, Jenkins has not sufficiently established that a member outside of his protected class was hired for his position as a porter. With regard to his racial discrimination claim, Jenkins states only that he saw two Caucasian individuals whom he had trained programming televisions, which was one of his job duties. Jenkins Aff. ¶ 17. Likewise, the only indicia of national origin is Jenkins' statement that these two Caucasian individuals had foreign accents. *Id.* ¶ 16. These statements, even if true, are plainly inadequate to establish that a member outside of his protected class was hired to replace him. The Caucasian individuals have not been identified, and no records, documents, affidavits or depositions indicate their positions at the Inn or their national origins. It is unknown if these Caucasian employees with foreign accents replaced Jackson. Accordingly, as a matter of law, Jenkins has failed to establish a *prima facie* case of racial or national origin discrimination.

### 2.   *Humphrey's Legitimate, Nondiscriminatory Reason for Jenkins' Termination*

Assuming, *arguendo*, that Jenkins has established a *prima facie* case of racial discrimination, the burden shifts to Humphrey to articulate a legitimate, nondiscriminatory reason for terminating Jenkins. To satisfy this requirement, the defendant must articulate a clear and reasonably specific factual basis upon which it based its subjective opinion for an employment action. *See Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1076 (11th Cir. 2003). Further, the evidence must include facts that show what the decisionmaker knew at the time he or she made the decision. *See id.*

Humphrey's professed legitimate, nondiscriminatory reason for terminating Jenkins is that Humphrey decided to outsource its staffing needs for a variety of business purposes, including:

increased staffing flexibility based on seasonality; decreased costs; decreased costs related to holiday and vacation pay; no workers' compensation expenses; and providing a larger selection of potential employees. Humphrey's Mot. at 5-6; Emp. Aff. ¶¶ 5, 7. Humphrey avers that, in 2009, it determined that the Inn was receiving numerous complaints, low ratings, and low revenues, and learned that other successful hotels in the area, with higher ratings and fewer complaints, utilized employee leasing companies. Emp. Aff. ¶¶ 4, 5. Accordingly, Humphrey had the employment leasing agency evaluate the performance of its current staff. *Id.* ¶ 9. Humphrey ultimately decided that it would be in its best interests to eliminate all of the housekeeping staff, as well as other positions, and replace them through an employee leasing agency. *Id.* ¶¶ 6, 8-9, 11. Humphrey states that it did not in any way prevent any of the terminated employees from seeking re-employment through the leasing agency. *Id.* ¶ 15; Silva Aff. ¶ 8. Humphrey further adds that the purpose of the "Help Wanted" sign, posted shortly after the housekeeping staff was terminated, was to fill positions not being leased out. Emp. Aff. ¶ 14; Silva Aff. ¶ 7.

As many other courts have found, the Court finds that Humphrey's proffered reason for its decision to terminate Jenkins—outsourcing to save costs—is legitimate and nondiscriminatory.[3] *See, e.g.*, *Cashman v. Univ. of Alabama Bd. of Trustees*, 260 F. App'x 216, 217 (11th Cir. 2007) (holding as legitimate and nondiscriminatory the defendants' proffered reason for terminating the plaintiff—that they wanted to outsource her interior design duties to an outside contractor in order

---

[3] Humphrey also appears to suggest that Jenkins was fired for failing to return to work following his work-related injury. Humphrey's Opp. at 4. However, the date of Jenkins' termination for failure to return to work is internally contradicted—Humphrey's General Manager avers that Jenkins was not terminated until June 2010, but Humphrey's President avers that Jenkins was terminated in either June, July, or August 2009. *Compare* Silva Aff. ¶ 6 with Emp. Aff. ¶ 11. In light of this glaring contradiction, the Court does not credit this as a legitimate reason for Jenkins' termination. Nevertheless, Humphrey's business decision to outsource its labor costs, standing alone, is a sufficient legitimate, non-discriminatory reason for Jenkins' termination.

10

to save costs and achieve standardization across the campus); *Felder v. Nortel Networks Corp.*, 187 Fed. App'x 586, 588, 592-93 (6th Cir. 2006) (holding as legitimate and nondiscriminatory the defendant's decision to outsource the accounting function in which the plaintiff worked in order to reduce costs as part of a massive, company-wide restructuring); *see also Paulk v. Housing Authority of City of Douglas*, No. CV506-118, 2007 WL 3511443, *1, *5 (S.D. Ga. Nov. 14, 2007); *Martin v. Housing Authority of City of Douglas*, No. CV506-116, 2007 WL 3511300, *1, *4 (S.D. Ga. Nov. 14, 2007); *Wilson v. Housing Authority of City of Douglas*, No. CV506-117, 2007 WL 3511337, *1, *4 (S.D. Ga. Nov. 14, 2007).

      3.  *Jenkins' Argument Regarding Pretext*

To rebut an employer's legitimate nondiscriminatory reasons for its adverse action, the employee must produce evidence that directly establishes discrimination or that permits the jury to reasonably disbelieve the employer's proffered reason. *Steger*, 318 F.3d at 1076. Specifically, a plaintiff can either demonstrate directly that a discriminatory reason more likely than not motivated the employer, or indirectly show that the employer's proffered explanation is unworthy of credence. *See Jackson v. Alabama State Tenure Comm'n,* 405 F.3d 1276, 1289 (11th Cir. 2005). Simply quarreling with the employer's legitimate reason, however, is not sufficient to rebut the proffered reason; rather, the reason must be met head on with some evidence of pretext. *Wilson v. B/E Aerospace, Inc*., 376 F.3d 1079, 1088 (11th Cir. 2004). Accordingly, the plaintiff must demonstrate weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action, such that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons. *See Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir.1994).

Jenkins argues that there is a genuine issue of material fact as to whether the reasons Humphrey proffers for his termination are truthful. Jenkins' Opp. at 9-10. Specifically, Jenkins points out that, just one week after he and other employees were terminated, Humphrey posted a "Help Wanted" sign outside of the Inn, but did not call him or any of the other plaintiffs back to work. *Id.*; Jenkins Mot. at 3. Jenkins further adds that, although Humphrey claims to have terminated all employees in the service department and replaced them with leased employees, it did not terminate three Caucasian housekeepers. Jenkins' Opp. at 10; Jenkins' Mot. at 3. Jenkins finally contends that all of the employees supposedly selected by Humphrey through the leasing agency were Caucasian and had foreign accents. Jenkins' Opp. at 10.

The Court finds that these facts alone, even if true, are insufficient for establishing pretext. Critically, there is no actual evidence that the three Caucasian individuals who remained in Humphrey's employ were not terminated and re-hired through the leasing agency. There is also no evidence as to how the replacement employees were selected or their qualifications, or that their selection did not meet the legitimate purpose of improving the motel's ratings, decreasing costs, and increasing staffing flexibility. There is no evidence as to their national origins. No application or employment records have been produced. There is no evidence to indicate that the "Help Wanted" sign was placed to fill Jenkins' position. There is no evidence to indicate that none of the terminated African-American employees of United States origin were called back to work. Jenkins has failed to show that any discriminatory animus motivated Humphrey to outsource his position on the basis of race or national origin.

Although a plaintiff may survive a defendant's motion for summary judgment if there is sufficient evidence to demonstrate the existence of a genuine issue of material fact regarding the truth of the employer's proffered reason for its actions, *Combs*, 106 F.3d at 1529, Jenkins has

failed to provide such evidence. Therefore, Humphrey's Motion for Summary Judgment will be granted as to Counts I and II of the Complaint, and Jenkins' Motion for Summary Judgment as to those counts will be denied.

### B. Count III: Termination Based Upon Age

The ADEA prohibits employers from taking an adverse employment action against an employee who is at least 40 years of age because of that employee's age. 29 U.S.C. §§ 623(a), 631(a). In *Gross v. FBL Financial Services, Inc.*, the Supreme Court held that a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but-for" cause of the adverse employment action. 557 U.S. 167, 180 (2009). A plaintiff can establish age discrimination through either direct or circumstantial evidence. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013). Here, Jenkins relies on circumstantial evidence.

The Eleventh Circuit evaluates ADEA claims based on circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *See Mitchell v. City of LaFayette*, 504 Fed. App'x 867, 869 (11th Cir. 2013); *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332–33 (11th Cir. 2013). Under this framework, a plaintiff may establish a *prima facie* case of ADEA discrimination by showing that: (1) he was in a protected age group; (2) he was adversely affected by an employment decision; (3) he was qualified for his current position; and (4) he was replaced by a younger individual. *Mitchell*, 504 Fed. App'x at 870. Once a plaintiff establishes a *prima facie* case of age discrimination, the employer may rebut the resulting presumption of discrimination by articulating at least one legitimate, nondiscriminatory reason for its action. *Id*. Upon this showing, the burden shifts back to the plaintiff to produce evidence that the employer's proffered reason is a pretext for discrimination. *Id*. Importantly, though, as with race discrimination claims, "the burden of persuasion always remains on the plaintiff in an ADEA case to proffer evidence sufficient to permit

13

a reasonable fact finder to conclude that the discriminatory animus was the 'but-for' cause of the adverse employment action." *Sims*, 704 F.3d at 1332.

Humphrey does not dispute that Jenkins, who was 54 years old at the time of his termination, was in a protected age group under the ADEA, or that he suffered an adverse employment action—specifically, the termination of his employment. Humphrey's Opp. at 5. Further, the Court has already concluded that Jenkins' long tenure with Humphrey—seven and a half years—with no evidence of any problems supports the inference that he was qualified for the position of porter. *See* Section III.A, *supra*.

As with his Title VII claim, however, Jenkins has failed to establish the fourth element—that he was replaced by a younger individual. Jenkins states only that on the day he was terminated, he saw two individuals "whom he believed to be in their 20's" performing one of his job duties. Jenkins' Aff. ¶¶ 16, 17. This statement, without more, is insufficient to support an inference that Jenkins was replaced by a younger individual. The individuals who are allegedly in their twenties have not been identified, and no records, documents, affidavits or depositions indicate their positions at the Inn. There is simply no evidence to indicate that these individuals replaced Jenkins, much less that they were even the age that Jenkins believed them to be. Accordingly, Jenkins has failed to establish a *prima facie* case of age discrimination.

Assuming, *arguendo*, that Jenkins has established a *prima facie* case of age discrimination, the burden shifts to Humphrey to articulate a legitimate, nondiscriminatory reason for terminating him. For the reasons discussed in Section III.A, *supra*, as with the Title VII claim, Humphrey has proffered a legitimate, nondiscriminatory reason for its termination of Jackson, and Jenkins has not raised a genuine issue of material fact as to whether this reason is pretextual. Therefore,

Humphrey's Motion for Summary Judgment will be granted as to Count III of the Complaint and Jenkins' Motion for Summary Judgment will be denied as to that count.

## IV. CONCLUSION

For the aforementioned reasons, Jenkins' Motion for Summary Judgment will be denied, and Humphrey's Motion for Summary Judgment will be granted. No genuine issues of material fact exist for determination by a jury and Humphrey is entitled to judgment in its favor as a matter of law.

Accordingly, it is hereby **ORDERED:**

1. Plaintiff Tchaivosky Jenkins' Motion for Summary Judgment (Doc. 23) is **DENIED**.

2. Defendant Humphrey Management and Hospitality, Inc., d/b/a Inn on the Beach's Motion for Summary Judgment (Doc. 47) is **GRANTED**.

3. The Clerk is directed to terminate all pending motions, enter judgment in favor of Defendant, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on August 25, 2014.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record